Catron, Ch. J.
1. Was the .evidence, that Sarah Ewell was the daughter of Pleasant Ewell, and that Dab-ney Ewell was the brother of Pleasant Ewell, competent?
The witnesses say they were so reputed. It is insisted tha.t the marriage of the father and mother of Pleasant and Dabney Ewell must be proved, and also that of Pleasant Ewell and his wife, the mother of Sarah Ewell, and'then the issue: that this is the best evidence of relationship: that the very fact of marriage of the parents must be proved as in cases of bigamy, and for criminal conversation.
In these cases the indictment in the one, and the declaration in the other, aver, of necessity, the existence of a marriage, for the violation of which the defendant is punished. In bigamy, if he had not been previously married, there was no crime in marrying.
But here, there is no such allegation, and no necessity for proof other than such as corresponds with the averment in this respect.
The witnesses say Pleasant Ewell and Dabney Ewell were reputed tobe brothers, and Sarah'Ewell was reputed to be the daughter of Pleasant Ewell. What more can any man prove of his neighbors generally? The fact of the birth of even the young woman it would be difficult to prove, the marriage of her parents still more so; and to prove the marriage of the parents of Pleasant and Dabney Ewell, and the respective births of these during that marriage would be so nearly impossible as to render a prosecution for incest a hopeless experiment. That the fact, recognized all their lives, never denied or doubted by any one, should be incompetent evidence to a jury to prove the Ewells brothers and that Sarah Ewell was the daughter of Pleasant Ewell, could not be proved by ’a young woman who had known her from her infancy, had grown up with, and been her playmate, comes so strongly in conflict with the common mode of learning who our neighbors are, that it is impossible to give it place sa the *370 mind without violating the best impressed convictions of established truths. The plain sense of mankind would revolt at a decision declaring such proof incompetent, and in its stead requiring marriages and births to be proved, some of them having happened perhaps fifty or sixty years since, and probably in a foreign country, and that this too must be proved by persons present, and a marriage license be produced. To sustain the prosecution, two marriages and three births must be established by the best evidence the nature of the case admits of. I think this objection cannot be sustained, testing it either by common sense, on principle, or by authority.
It is a primary rule on the trial of issues, that the proofs must correspond with the allegations, and that this proof must be the best in the power of the party who maintains the affirmative. If it appear thatbetter evidence is behind, and in the party’s power, the presumption is that it is unfavorable, or it would have been produced. As if non est factum be pleaded to a bond sued on, the subscribing witness, if one, must be introduced to prove the execution of the bond; yet if he be beyond the jurisdiction of the court, the handwriting of the witness or obligor may be given in evidence, because the best in the plaintiff’s power. Stump vs. Hughs, 4 Hay. Eep. 96. In establishing rules of evidence, arguments from inconvenience have great weight. The situation of the country must be attended to, and the rules of evidence adapted to its circumstances. That which might be very easily proved in England, as a marriage by a parish register, it would be next to impossible to prove in a country new as this; hence tlie necessity, in some instances, of relaxing the rules of evidence found in the English books. That this should not be done, save in cases of the most manifest necessity, is admitted, yet such occasions will arise. In England it is a rule that in an action for criminal conversation with the plaintiff’s wife, a marriage in fact must be proved. Morris vs. Miller, 4 Burr. 2059. *371 Acknowledgements, cohabitation and reputation are not sufficient to maintain the action, ouch a case presented itself to the supreme court of Pennsylvania, (Forney vs. Hallader, 8 Sergt. and R. 160,) where the court doubts the correctness of the decision in Burrow, but declares, were it correct, that circumstances peculiar to that State required the rule in some degree to be relaxed.. It is said, “the boundless field of enterprize in the new States that are continually forming, readers the habits of the people of America essentially those of migration; and besides^ no inconsiderable portion of the population is made up of emigrants from abroad, many of whom are married when they come here. The witnesses to marriages celebrated here, are in the usual course soon dispersed over this extensive country, and neither their testimony nor that of witnesses abroad can ordinarily be had, except at an expense that puts it beyond the reach of all whose circumstances are not above mediocrity.” These remarks apply with more force to Tennessee than they did to Pennsylvania, because this is a much newer country than that. In criminal causes, where the accused must be confronted with the witnesses, it would be impossible to prove a marriage in fact in a majority of instances,, indeed, in almost every instance where the marriage had taken place abroad, either in Europe or a sister State. To adopt, and in its strictness apply the English rule in cases of criminal conversation and bigamy, in this case, and compel the State to prove a marriage in fact between the father and mother of the Ewells; and then the marriage in fact between Pleasant Ewell and his wife, and this by witnesses present at the respective marriage ceremonies, would be requiring next to an impossibility. The county of Bedford, where the crime was committed, has been settled but little more than twenty years; that witnesses could be found there to prove the most recent marriage, is improbable, but that none could be found there to prove the marriage of the *372 grand father and mother of the offending female, may be taken for granted. To sustain the objection to the competency of the evidence of reputation of marriage, would be to discharge the defendant.
But, uninfluenced by any considerations growing out of the situation of this country, wag not the evidence correctly admitted by the circuit court? The rule that the best evidence the nature of the case admits of shall be had, and that hearsay is not equal to knowledge of the fact" and generally incompetent, has its exceptions, grounded partly in necessity, and partly on the probability that common repute is true in certain cases. The exception has become a general rule of evidence where the fact of marriage, the state and condition of the family, or the relationship of its various members is sought to be established. Cohabitation as man and wife, and general reputation, are evidence of marriage as well as relationship. 1 Stark. Ev. 58: 2 Id. 959: Vaughan vs. Phebe, 1 Mar. and Yer. 17.
This being a general rule, does the case of incest form an exception to it? In bigamy the crime consists in violating the first marriage vow. This is precisely alleged in the indictment, and the English courts hold must be as precisely proved by evidence of the fact of marriage. In cases for criminal conversation, the violation of the marital rights of the husband is the ground of action. The marriage must be alleged and strictly proved. The strictness of the rule in cases of bigamy was recognized and provided against in the penitentiary act, (sec. 16,) so as to make the defendant’s acknowledgements and conduct evidence. Incest being a newly created felony by the 18th section of that act, must on a trial of the charge, be proved as charged. The charge is that the defendant had carnal knowledge of his brother’s daughter. To establish the relationship of the offending parties, that of the brothers must be made out, as also that of father and daughter. But these are incidental facts not alleged in *373 this indictment, or required to be alleged by the statute. 1 o prove the relationship, the general rules- ol evidence apply in this case, as in others where pedigree must be proved to establish a fact or malee out a title. There is no difference as to rules of evidence in criminal and civil causes. 2 M’Nally’s Ev. 357, ch. 1, rule 6, At. Gen. vs. Le Marchant. Such proof as the nature of the case admits of and is in the power of the party, whether State or defendant, is competent in a prosecution for felony, if it would be competent in an action of ejectment. M’N’s Ev. 73. According to the rules of evidence laid down in the English authorities the proof was correctly heard.'
We have examined the case, of the State vs. Roswell, in 6 Conn. Rep. 447. There it was holden, a marriage in fact must be proved between the father and mother The father was charged with the commission of the crime of incest with his legitimate daughter, and the court grounded its opinion on the word legitimate. The Connecticut statute we have not seen, therefore cannot judge of the correctness of the decision.
It is next objected, that the court permitted the jury to hear proof of acts of incest by defendant before the penitentiary act took effect, and also after the indictment was found. So is the statement in the bill of exceptions. But no objection was made to the introduction of the evidence, and in a civil cause no advantage could be taken of the circumstance on a writ of error. The counsel for defendant, however, earnestly insists that as a revising tribunal, the supreme court ought to see that justice be done the defendant, regardless of the formalities observed in civil causes.
The law is well settled, that in a civil cause if evidence be offered which is incompetent, but permitted to go to the jury without objection, it is too late to except after verdict. The objection to the character of the evidence is waived. Jackson vs. Dillon, 2 Ten. Rep. 263.
On what ground is it asked to depart from this rule? *374 The act of 1811, ch. 72, gives the appeal in the nature of a writ of error. The terms of the act do not seem to embrace criminal causes. The supreme court construed the act to include them, and determined in favor of its jurisdiction. So is the now settled law. But from this decision a consequence followed. To make the appeal in error effectual, it was necessary to give the the defendant the right to a bill of exceptions in the court below. The bill of exceptions is not authorised by the act of 1811, or any other American statute, but rests on the stat. of West. 2, 13 Edw. 1, st. 1, ch. 31. 1 Stat. at large 105. M’Nally’s Ev. 325: 1 Stark. Ev. 430.
The statute of West. 2, did not extend to criminal cases, as was determined in Sir Henry Vane’s case, 2 State Trials 343: M’Nally’s Ev. 325. Yet in this State it was permitted defendants to except so soon as the writ of error was allowed them under the act of 1811, the same as in civil causes, most probably without strict enquiry as to the authority. However doubtful the right may have been when first assumed, it is not now open to challenge. But on what ground does the plaintiff in error stand? On the foot of a party in a civil suit. The defendant has availed himself of a statute applicable in its terms to civil causes only, and to say it meant one thing in this cause, and differently in another, would be to shape it to our fancy. It is made our duty by the statute to revise the orders and judgments of the court below.— Evidence is offered by the state, is not objected to, and heard: nor is the court asked to withdraw it from the jury when the cause is finally submitted. A verdict is had, and then complaint is made that improper evidence was admitted. When the court or the opposite counsel is not asked to think or act, and all objections are waived, and an experiment is made, the rules of law and propriety require the party complaining should not be heard.' No judgment has been given for this court to revise. Suppose one of the grand jurors who found the indictment had *375 been presented as a traverse juror, not objected to by the prisoner, and been one oí the jury who found him guilty: would this be error? Clearly not. The objection must come in time. 1 Yerg. R. 219. In admitting evidence there is no distinction between civil and criminal causes, the rules of practice in this respect being the same. The cause of Jackson vs Dillon is conclusive. It has been followed as undoubted authority, and often, by this court.
It is next objected, that it is not stated in the bill of exceptions that the crimp was committed in the county of Bedford; nor can the fact be inferred from the proof set forth in the record; which we are told was the whole proof.
The court below not having had jurisdiction from any thing appearing, .the defendant ought to have been discharged. We have anxiously looked for proof of natural objects, of which we can judicially take notice, to supply this defect in the facts set forth by the record, but none exist from which the fact may be inferred. We feel therefore bound on this ground to order a new trial.